## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA            :

     and                              :

*ex rel.*  STEVEN O. SANSBURY        :
2205 First Street, NW
Washington, DC 20001                :          **Case No.**

     and                              :

JAMES T. BUECHLER                   :          **FILED UNDER SEAL**
4538 Greencove Circle                          Pursuant to 31 U.S.C. § 3730
Sparrow Point, Maryland 21219       :          (False Claims Act)

     Plaintiffs                       :

vs.                                 :

LB&B ASSOCIATES, INC.               :
P.O. Box 21015
Charlotte, NC 28277                 :

Serve : Resident Agent             :
The Corporation Trust Incorporated
300 E Lombard St.                   :
Baltimore, MD  21048

And                                 :

LILY A. BRANDON                     :
7111 Carlisle Court
Clarksville, MD 21029               :

And                                 :

F. EDWARD BRANDON                   :
7111 Carlisle Court
Clarksville, MD 21029               :

And                                 :

BERING STRAITS AKI                  :
4720 Business Park Blvd., Suite G-40
Anchorage, AK 99503                 :

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane   ●   Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

Serve : Registered Agent                              :
   Gail R. Schuber
   4720 Business Park Blvd., Suite G-40     :
   Anchorage, AK 99503

                   :

And

   JAMES J. KRULIC                          :
   240 East Tudor Road, Suite 200
   Anchorage, AK 99503                      :

 And                                                 :

   GAIL R. SCHUBER                          :
   4720 Business Park Blvd., Suite G-40
   Anchorage, AK 99503                      :

 And                                                 :

   CHILKAT SERVICES, INC.
   PO Box 209                               :
   Haines AK 99827

                   :

Serve : Registered Agent                              :
   Thomas Crandall
   425 Sawmill Rd                           :
   Haines AK 99827                          :

     Defendants                         :

# COMPLAINT

Relator-Plaintiffs Steven O. Sansbury and James T. Buechler, by and through their

attorneys, bring this False Claims Act ("FCA") Complaint, on behalf of the United States of

America, against Defendants LB&B Associates, Inc ("LB&B"), a North Carolina corporation,

Bering Straits Aki, LLC ("BSA"), an Alaskan corporation, and Chilkat Services, Inc.

("Chilkat"), an Alaskan corporation.  F. Edward Brandon, and Lily Liang Brandon ("the

Brandons") are officers/owners of Defendant LB&B.  James J. Krulic ("Krulic") and Gail R

Schuber ("Schuber") are officers/owners of Defendant BSA.  Defendant LB&B has its main

corporate office in Columbia, Maryland.  Defendant BSA, while claiming to maintain an

office in Alaska, maintains its main corporate office out of LB&B's corporate office in

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

Columbia, Maryland.  Defendant Chilkat maintains its corporate office in Haines, Alaska.

Defendant LB&B has as its clients several federal government agencies and works in

individual quasi-partnerships (joint ventures) with Defendant BSA and Defendant Chilkat on

some of these federal contracts.  Defendants LB&B, BSA, and Chilkat have conducted

business in the District of Columbia and/or submitted documents to federal agencies located

in the District of Columbia.

## I.   NATURE OF THE CASE

1.   Relators-Plaintiffs' case arises from the Defendants' violations of the False

Claims Act, 31 U.S.C. §§ 3729-3733; the set-aside provisions of § 8(a) of the Small Business

Act, 15 U.S.C. § 637; 18 U.S.C.  § 1001 (for making false statements to federal agencies); 15

U.S.C. §645 (for misrepresenting a small business concern as being owned and controlled by

socially and economically disadvantaged individuals and a small business concern owned and

controlled by a woman in order to obtain contracts and subcontracts under § 8(a) of the Small

Business Act, 15 U.S.C. § 637); and for making false statements to enter the Mentor-Protégé

program of the Small Business Administration ("SBA") through, at least, two separate joint-

ventures in violation of 13 C.F.R. §121.103;  13 C.F.R. §124.520; 13 C.F.R. § 124.513.

Relators-Plaintiffs brings this action as a *qui tam* action for themselves and for the United

States Government, pursuant to the False Claims Act 31 U.S.C. § 3729 *et seq.*  "But for" the

intentional withholding of information and the false manipulation of information, the

government would not have paid monies to Defendants LB&B, BSA, and Chilkat under the

aforementioned applicable programs because these companies were and are not eligible to

enter those programs.  *See U.S. v. TDC Management Corp., Inc.*, 288 F.3d 421, 428 (D.C. Cir.

2002) ("adopting a 'but for' measure of damages, based on what the government would have

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax  220-1214

paid out had it known of the information that [Defendant] omitted . ...”), *cert. denied* 537 U.S. 1048 (2002).

## II.     JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. § 3732.

3.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 31 U.S.C. § 3732 because Defendants LB&B and BSA are doing or attempted to do business in the District of Columbia and/or many acts by Defendants proscribed by 31 U.S.C. § 3729 occurred in the District of Columbia.

## III.    PARTIES

4.      Relator Steven O. Sansbury is an adult citizen of the District of Columbia. Plaintiff was employed at LB&B as an Operations & Maintenance Institutional Planner from 2000 until his separation from the company in 2003.   Plaintiff has approximately ten (10) years experience as a government contractor, seven (7) years of which were at the NASA Goddard Space Flight Center in Greenbelt, Maryland (hereinafter “Goddard”).   In particular, Plaintiff was working on a five-year female-minority set aside contract for LB&B with Goddard prior to his separation and had direct contact with both Mr. Brandon and Mrs. Brandon.

5.      Relator James Buechler is an adult citizen of the state of Maryland.   Relator was employed at LB&B as the Assistant Project Manager at the FDA in Laurel, Maryland from on or about July of 2003 until on or about August 12, 2005.   Relator has approximately nineteen (19) years in the operation and maintenance field and two (2) years experience as a government contractor.   During his work at LB&B, Buechler worked on five different contracts (NASA, Goddard Space Flight Center in Greenbelt, Maryland, United States

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

Geological Survey Center in Reston, Virginia, National Archives I in the District of Columbia, National Archives II in College Park, Maryland, and the Federal Drug Administration in Laurel, Maryland). Relator Buechler has unique and extensive knowledge of how government contracts are run at Defendant LB&B. Relator handled the day-to-day oversight of Defendant LB&B's contractual obligations under the aforementioned contracts, which included ensuring that work was completed in a timely fashion for the Naval Yard location in the District of Columbia. Additionally, at times, Buechler was privy to the company's billing procedures, and Defendant Buechler had direct contact with both Mr. Brandon and Mrs. Brandon.

6. Plaintiff, the United States of America, through the SBA, administers the certification programs for Small Disadvantaged Businesses under the Small Business Act and the SBA's Mentor-Protégé program. In turn, federal agencies rely upon the certification by the SBA that a business is female and/or minority owned and controlled and/or that a joint venture that is properly certified under the SBA's Mentor-Protégé program when contracting with said business and/or joint venture for minority and government set asides.

7. Defendant LB&B is a North Carolina Corporation with its principal place of business in Columbia, Maryland. LB&B was and/or continues to allege it is a minority and women owned and controlled business and filed and/or continues to file and certify false documents to the SBA, such that it was and/or is considered by the SBA to be a socially and economically disadvantaged small business concern (a "section 8(a) concern") under the set-aside provisions of § 8(a) of the Small Business Act, 15 U.S.C. § 637(a). LB&B received this certification by annually submitting false documents certifying that Defendant Lily Brandon, its President, had control over the company such that she ran the day to day business operations, when in reality these operations were run by her husband, Defendant F. Edward

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200  •  Fax 220-1214

Brandon, a Caucasian male.  Additionally, LB&B conspired with both Defendant BSA and Defendant Chilkat to enter to the SBA's Mentor-Protégé program by submitting false documents through individual joint ventures with each company (BSA and Chilkat) that certified compliance with applicable regulations to enter the program.

8.      Defendant F. Edward Brandon is an owner, former Chief Operating Officer, and current President of LB&B and is a Maryland resident.  Upon information and belief, while working at LB&B, Defendant Mr. Brandon assisted in the submitting of fraudulent information to the SBA and assisted in the fraudulent billing of the United States of America, through several government agencies, for minority and female set aside contracts.

9.      Defendant Lily Liang Brandon is an owner and former President of LB&B and is a Maryland resident.  Upon information and belief, while working at LB&B, Defendant Mrs. Brandon assisted in the submitting of fraudulent information to the SBA and assisted in the fraudulent billing of the United States of America, through several government agencies, for minority and female set aside contracts.

10.     Defendant BSA is an Alaskan Corporation with its principal place of business in Columbia, Maryland.  BSA falsely certified that it is qualified to enter into a joint venture with Defendant LB&B under the SBA's Mentor-Protégé program and specifically assisted Defendant LB&B to falsely certify that a joint venture between the companies was in compliance with applicable regulations to enter the Mentor-Protégé program.

11.     Defendant James J. Krulic is an officer of BSA and an employee of LB&B. Defendant Krulic assisted both BSA and Defendant LB&B by helping them certify that the joint venture between the companies was in compliance with applicable regulations to enter the Mentor-Protégé program.

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

12.     Defendant Gail R. Schuber is an officer of BSA.  Defendant Schuber assisted both BSA and Defendant LB&B by helping them certify that the joint venture between the companies was in compliance with applicable regulations to enter the Mentor-Protégé program.

13.     Defendant Chilkat Services, Inc. is an Alaskan Corporation with its principal place of business in Alaska.  Chilkat falsely certified that it is qualified to enter into a joint venture with Defendant LB&B under the SBA's Mentor-Protégé program and specifically assisted Defendant LB&B to certify that a joint venture between the companies was in compliance with applicable regulations to enter the Mentor-Protégé program.

## IV.     BACKGROUND

**False Claims Act**

14.     The False Claims Act (FCA) provides that any person who causes a false claim to be submitted to the Government is liable for a civil penalty of between $5,500 and $11,000 per claim plus three times the amount of damages the Government sustained.  31 U.S.C. § 3729(a); 28 C.F.R. § 85.3.   For purposes of the FCA, "the terms 'knowing' and 'knowingly' mean that a person, . . . (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information."  *Id.* at §(b).  "[N]o proof of specific intent to defraud is required" for a successful claim under the FCA.  *Id.*

**SBA Section 8(a) Certification Program for Minority and Female Set Asides**

15.     "[The U.S. Small Business Administration, Section 8(a) Minority Small Business Development Program (Section 8(a) Program)] allows federal agencies and entities to 'set aside' certain contracts for the sole benefit of Section 8(a) program participants. This process allows small, minority-owned businesses to obtain government contracts with little to

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

no competition." *See United States ex rel. Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 246 (D.D.C. 2003).

16.    "**To qualify as a Section 8(a) program participant, the company must meet three requirements**. First, the company must be 'socially and economically disadvantaged.' 15 U.S.C. § 637(a)(4)(A). For a company to be socially and economically disadvantaged, either one or more socially and economically disadvantaged persons must 'unconditionally' own at least 51% of the company, or 51% of the publicly traded stock must be 'unconditionally owned by one or more socially and economically disadvantaged individuals.' 15 U.S.C. § 637(a)(4)(A)(i)-(ii)." *Id.* (emphasis added).

17.    "**Second, the 'management and daily business operations' must be 'controlled by one or more socially and economically disadvantaged individuals.**' 15 U.S.C. § 637(a)(4)(B). Socially disadvantaged individuals are those individuals who have been 'subjected to racial or ethnic prejudice or cultural bias because of their identity as a member [*sic*] of a group without regard to their individual qualities.'" *Id.* (emphasis added) (citing 15 U.S.C. § 637(a)(4)(B); 15 U.S.C. § 637(a)(5)); *see also* 13 C.F.R. 124.106 (noting that control includes the day-to-day management of the company). While it is possible that a white male, controlled company can meet the certification requirements as "socially disadvantaged," it is exceedingly unlikely that such a finding will be made by the SBA. *See* 13 C.F.R. § 124.103(a) (stating that "[s]ocially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias within American society because of their identities as members of groups and without regard to their individual qualities. The social disadvantage must stem from circumstances beyond their control"). Moreover, white male owned companies do not receive the "rebuttable presumption" that the company is disadvantaged, as do other companies controlled by a minority such as an individual of Asian

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

Pacific decent. *Id.* at §(b). "Economically disadvantaged individuals are those individuals unable to 'compete in the free enterprise system . . . due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged.' 15 U.S.C. § 637(a)(6)(A). When determining if an individual qualifies as 'economically disadvantaged,' the government considers the assets and net worth of the individual." *See United States ex rel. Fisher*, 217 F.R.D. at 246.

18.     "Finally, **each Section 8(a) program participant must certify on an annual basis that each of the above-mentioned requirements concerning ownership and control of the company still exist.** The Section 8(a) program requires each participant to submit the following annually:

> (i) a personal financial statement for each disadvantaged owner; (ii) a record of all payments made by the Program Participant to each of its disadvantaged owners or to any person or entity affiliated with such owners; and (iii) such other information as the Administration may deem necessary to make the determinations required by this paragraph."

*Id.* at 246-47 (citing and quoting 15 U.S.C. § 637(a)(4)(C);  15 U.S.C. § 637(a)(6)(B)).

19.     After being certified by the SBA under Section 8(a) of the Small Business Act, a company then can attempt to receive contracts from other government agencies that are set aside for Section 8(a) certified companies "with little to no competition." *See United States ex rel. Fisher*, 217 F.R.D. at 246.

20.     Under United States Code and Code of Federal Regulations, an applicant for Section 8(a) certification and those companies seeking government contracts for these set aside programs have certain obligations, including not making false statements or misrepresentations of material facts concerning the certification process and also when bidding and contracting for payment of monies under these set aside contracts. *See* 15 U.S.C. § 637; 18 U.S.C. § 1001; and 15 U.S.C. §645.

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

**Requirements of the SBA's Mentor-Protégé Program**

21.     The Mentor-Protege Program is designed to encourage "approved Mentors to provide various forms of assistance to eligible protege Participants.  The purpose of the mentor-protege relationship is to enhance the capabilities of the Proteges; and to improve their ability to successfully compete for federal contracts."  *See An Overview: The SBA Mentor-Protege Program* (visited Jan. 31, 2007), available at <<http://www.sba.gov/8abd/mentoroverview.html>>, attached as Exhibit 1.  In sum, while a Mentor need only be in good standing, the protégé "**must:** (i) Be in the developmental stage of the 8(a) Program, or (ii) Have never received an 8(a) contract; or, (iii) Its size is less than half the size standard corresponding to its primary SIC code."  *Id.* (emphasis in original).  The advantage of being a mentor company in this program is that the company can receive portions of the 8(a) funds through a joint-venture with an 8(a) eligible company while it, on its own, is not eligible to receive 8(a) funding.  *Id.*

22.     The requirements under the Mentor-Protégé program are extremely strict with respect to "affiliation" between the mentor and the protégé.  *See Lance Bailey & Associates, Inc./Global McKissack Partners, LLC,*  Small Business Administration (S.B.A.) Office of Hearings and Appeals, SBA No. SIZ-4799, 2006, 2006 WL 2241683 (July 13, 2006) ("*Lance Bailey*") ("Exceptions to affiliation must be narrowly construed.  SBA's demonstrated intent to make the definition of affiliation very inclusive emphasizes the importance of this rule") (citing 13 C.F.R. §§121.103(a), (c) – (i), 124.520(d)(4)); *Size Appeal of Precision Pine and Timber, Inc.*, SBA No. SIZ-3230 (1989)), attached as Exhibit 2.

23.     The reason the SBA strictly adheres to the "affiliation" requirements between the mentor (the non-8(a) company) and the protégé (the 8(a) company) is so that the 8(a) company is not used as a shell that only brings its 8(a) status to the relationship.

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

If SBA does not narrowly construe exceptions to affiliation, it runs the considerable risk of nullifying time proven and widely understood affiliation rules and of expanding the exception. **Therefore, when SBA interprets and applies 13 C.F.R. § 124.513 and its provisions, it must apply the exception literally and narrowly so as to preclude situations where the 8(a) concern brings very little to the joint venture relationship in terms of resources and expertise other than its 8(a) status.** *See* 13 C.F.R. § 124.513(a)(2).  For the same reasons, when applying the mandated prerequisites for an approved joint venture agreement in 13 C.F.R. § 124.513(c), it is imperative SBA strictly and literally apply its requirements.

*Id.*  (emphasis added).

24.     Specifically, when a mentor and protégé submit their "joint venture agreement" to the SBA for approval and prior to the joint venture's approval to bid on set aside contracts, the agreement must contain a provision and the mentor and protégé must certify to the SBA that the 8(a) participant (the protégé) is the "managing venturer" of the joint venture and importantly that an employee of the managing venturer (the protégé) is the "project manager responsible for performance" of the 8(a) contract.  *See* 13 C.F.R. § 124.513(e) ("Prior approval by SBA.  SBA must approve a joint venture agreement prior to the award of an 8(a) contract on behalf of the joint venture");  *id.* at § (c)(2) ("Contents of joint venture agreement.  Every joint venture agreement to perform an 8(a) contract, including those between mentors and proteges authorized by § 124.520, must contain a provision:  . . . [d]esignating an 8(a) Participant as the managing venturer of the joint venture, and an employee of the managing venturer as the project manager responsible for performance of the 8(a) contract").

25.     When a joint venture is attempting to enter the mentor-protégé program through its submission of the joint venture agreement for SBA approval, the project manager of the joint venture must be from the 8(a) certified company (the protégé).  This is also the time when the SBA determines the "size" of the joint venture operation.

Therefore, the most immediate limitation on 13 C.F.R. § 124.513(c)(2) is that the JVA must comply with its requirements when the concern certifies its size (the formal

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

response to the solicitation).  In other words, for an employee of Global to be 'an employee,' it must be an employee as of the date of its offer or proposal, which is when SBA determines its size.  This is because in order to be effective, **the exception to affiliation must be true as of the date SBA determines the size of the protested concern**.

*See Lance Bailey, supra.*

26.    Future employees of the 8(a) protégé becoming project managers will not fulfill the requirement that project managers be current employees at the time of the application.

> GMP's interpretation of 13 C.F.R. § 124.513(c)(2) is also unreasonable because the plain language of the regulation uses the present tense.  Specifically, it does not require the JVA designate 'a future employee of the managing venturer' or 'an individual that will become an employee of the managing venturer.'  Rather, the precise requirement is that the JV designate 'an employee of the managing venturer as the project manager responsible for performance of the 8(a) contract.'  This language undoubtedly deals with the present.  **It is an inherent property of being 'an employee' that a person be a current or present employee of the managing venture, not a future employee.  Certainly, there is a big difference in being currently employed versus having an offer of future employment based upon GMP's speculative success in having DOL award it a contract.**

*Id.* (emphasis added).

27.    Again, the mentor-protégé exception to affiliation is to be narrowly construed and allowing the protégé to designate a future employee as the program manager would result in the protégé bringing little more than its minority-disadvantaged 8(a) status to the joint venture because it cannot manage the operations.

> GMP's interpretation would also expand the scope of the exception to affiliation and is thus incorrect as a matter of law.  As discussed above, 13 C.F.R. § 124.513(c)(2) is an exception to the affiliation rules of 13 C.F.R. § 121.103. Therefore, expanding or relaxing mandatory JVA requirements is not acceptable, for exceptions are to be narrowly construed. *Size Appeal of Precision Pine and Timber, Inc.*, SBA No. SIZ-3230 (1989).  **GMP's interpretation would expand the exception by permitting 8(a) concerns to bring even fewer resources or expertise to the joint venture relationship beyond their 8(a) status, which 13 C.F.R. § 124.513(a)(2) specifically prohibits.**

*Id.* (emphasis added).

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

28.     Therefore, the SBA cannot approve a joint venture that does not have a current 8(a) protégé employee as its project manager at the time the joint venture submits its agreement for approval to the SBA.  Specifically, to waive the requirement that a current employee from the protégé be the manager would allow the 8(a) concern to "shop around" its 8(a) status, which is contrary to the central intent of the mentor-protégé program.  *Id.* (noting "it was wrong to approve the JVA between M&M and Global because it gives the appearance of permitting Global to traffic with its 8(a) status" because "[a]t the time of its offer, Global did not even have an employee capable of being the project manager for the DOL procurement . . .").

## V.     FACTS

### Initial Fraud By LB&B to Enter the 8(a) Program and Receive 8(a) Funding

29.     Defendant LB&B, with the assistance of Defendants Mr. and Mrs. Brandon, since the mid-early 1990's, knowingly submitted, caused to be submitted or facilitated the submission of false and fraudulent documents to the Small Business Administration ("SBA") annually for a period of several years, certifying that it was a minority-women owned business in order to avail itself of the set-aside programs and government contracts exclusively available to socially and economically disadvantaged small businesses (minority and women-owned businesses), as created by § 8(a) of the Small Business Act, 15 U.S.C. § 637.  *See SBA Profile*, (updated Aug. 4, 2006), <<http://pro-net.sba.gov/sybase-bin/pro-net.cgi?FNC=firmlist_submit__Afirmlist_html___PN103837>>, attached as Exhibit 3 ("SBA Profile"); 15  U.S.C. §637(a)(4)(C) (stating that "[e]ach Program Participant shall certify, on an **annual** basis, that it meets the requirements of this paragraph regarding ownership and control") (emphasis added).  Defendant LB&B, with the assistance of Defendants Mr. and Mrs. Brandon, has certified to the SBA that its "minority code" is "Asian Pacific American"

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane   •   Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

and that the business is "women-owned." *See SBA Profile.*  Moreover, Defendant LB&B

participated in the "8(a) Certification" through its certification number "102123" and entered

the SBA 8(a) program on April 6, 1995 and exited the program on April 6, 2004.  Defendant

LB&B also entered the Small Disadvantaged Business Certification program on August 24,

1998 and exited the program on August 7, 2006.  *Id.*

      30.     During the relevant time period as stated above, Defendant LB&B participated

in numerous multi-million dollar set aside contract programs and contracted with several

government agencies for these set asides throughout the United States.  Defendant LB&B

participated in these numerous contracts, most of which are/were contracts that were set aside

for minority and/or women owned businesses, based upon its false, annual "8(a)

Certification" and/or its false, annual Small Disadvantaged Business Certification.  These

included contracts with the ARMY, Defense Logistics Agency, Nations Aeronautics and

Space Administration, the United States Air Force, and other federal agencies such as the

Department of the Navy at the Naval Yard in the District of Columbia.  These contract

number several hundred million dollars.  *See Contractor Profile: LB&B Associates*

<http://www.fedspending.org/fpds/fpds.php?state=MD&parent_id=137500&sortby=f&detail

=1&datype=T&reptype=r&database=fpds&fiscal_year=&submit=GO> (visited Feb. 1, 2007),

attached as Exhibit 4.

      31.     Defendant LB&B, while annually certifying that it was a small, minority-

women owned and controlled business with the assistance of Defendants Mr. and Mrs.

Brandon, did not meet the statutory and regulatory definition of a small, minority-women

owned and controlled business, and it therefore, could not and should not have availed itself

of the federal government contract set asides under §8(a) of the Small Business Act.

Defendant LB&B's President and CEO, Lily A. Brandon, a female of Asian Pacific origin,

**Joseph**
**Greenwald**
**& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane   •   Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

14

did not and has never operated the day-to-day business.  The day-to-day operations of LB&B

should have been run by Mrs. Brandon, the economically and socially disadvantaged

individual who LB&B annually certified to the SBA "controls" the company, in order for it to

have legally qualified for these minority-women owned set asides.  *See* 13 C.F.R. 124.106

(defining "[w]hen do disadvantaged individuals control an applicant or Participant?" as

"control is not the same as ownership, although both may reside in the same person.  ***SBA***

***regards control as including*** *both the strategic policy setting exercised by boards of directors*

*and* ***the day-to-day management and administration of business operations***.  *An applicant or*

*Participant's management and daily business operations must be conducted by one or more*

*disadvantaged individuals . . ..*") (emphasis added); *and* 15 U.S.C. § 637(a)(4)(B) (stating that

the "management and daily business operations" must be "controlled by one or more socially

and economically disadvantaged individuals"); *SBA Profile* (certifying to the SBA that LB&B

is minority and women owned and controlled company).

   32. Defendant Mrs. Brandon in fact was a front for the business so that it could

receive minority and female set asides under §8(a).  The day-to-day operation of the business,

since its founding, has been and currently is run by Defendant F. Edward Brandon, Mrs.

Brandon's husband and the former Chief Operating Officer and current President.  Mr.

Brandon is a Caucasian Male and not socially disadvantaged or economically disadvantaged,

which are the necessary elements to qualify for minority-female set asides under the Small

Business Act.  *See* 13 C.F.R. §124.103 (defining "socially disadvantaged" as "those who have

been subjected to racial or ethnic prejudice or cultural bias within American society . . ..  The

social disadvantage must stem from circumstances beyond their control");  13 C.F.R.

§124.104 (defining "[e]conomically disadvantaged individuals [as] socially disadvantaged

individuals whose ability to compete in the free enterprise system has been impaired due to

**Joseph**
**Greenwald**
**& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200  •  Fax 220-1214

diminished capital and credit opportunities as compared to others in the same or similar line of business who are not socially disadvantaged").

33.     Defendant Mr. Brandon, as Defendant Mrs. Brandon's husband and a non-disadvantaged Caucasian male, was not permitted to exercise control over the day-to-day operations of the business or Mrs. Brandon's decisions, as such control is specifically forbidden under the regulations. *See* 13 C.F.R. §124.106(e) (stating that "no such non-disadvantaged individual or immediate family member may: (1) Exercise actual control or have the power to control the applicant or Participant").   In other words, Mr. Brandon's control of the day-to-day operations of the company disqualified LB&B from the female and minority set asides with the federal government agencies listed above such that it should never have received those government contracts. *Id.*

34.     In this respect, (1) because Mrs. Brandon never had "control" of LB&B, which is required for it to qualify for the aforementioned government contracts, (2) because LB&B actively sought to conceal Mr. Brandon's "actual control" of the company's operations on a day-to-day basis, and (3) because LB&B annually certified numerous times over a period of several years to the SBA and numerous government agencies with actual knowledge of, and/or in deliberate ignorance of the falsity of Mrs. Brandon's control of the company, and/or in reckless disregard of the fact that Mrs. Brandon is not the individual who "controls" the company, LB&B has committed multi-million dollar fraud upon numerous federal government agencies, including but not limited to those listed above.   In other words, the false, annual certification to the SBA resulted in LB&B being able to bid-on and then in many cases contract with numerous government agencies for funding it was not eligible to bid upon or contract to receive. *See* 13 C.F.R. §124.106;  18 U.S.C. § 1001; 15 U.S.C. §645; *U.S. v. TDC Management Corp., Inc.*, 288 F.3d 421, 428 (D.C. Cir. 2002) ("adopting a 'but for'

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •   Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

measure of damages, based on what the government would have paid out had it known of the information that [Defendant] omitted . ..."), *cert. denied* 537 U.S. 1048 (2002).

35.   Shortly after exiting the 8(a) program on April 6, 2004, LB&B and the Brandon's decided that they would no longer need to hide the fact that Mr. Brandon was running the company.  So, on or about November of 2004 a meeting for upper management at LB&B was called by F. Edward Brandon.  In this meeting, Mr. Brandon informed members of upper management that he was becoming the "President" of the company and that Mrs. Brandon was "retiring" from her position as "President."

36.   During their employment with Defendant LB&B, Relators went to meetings and functions with Defendant Mr. Brandon, the Chief Operating Officer and a white male, and also Defendant Mrs. Brandon, the President of LB&B and an Asian female.  Relators had the opportunity to observe both individuals in the workplace and to speak with other LB&B employees about them.

37.   Defendant Mrs. Brandon has a great deal of difficulty communicating in English with any degree of competency.  Defendant Mrs. Brandon's duties were limited to planning social events such as the Christmas party and picnics.  She did not run the day-to-day operations of the company and had limited contact with employees and customers. Defendant Mrs. Brandon had very little, if any, knowledge of or understanding of Facilities Operations Support Maintenance, the area which Defendant LB&B provides services to numerous government agencies.

38.   Defendant Mrs. Brandon also was known to fall asleep during meetings with government officials concerning the government's contracts.

39.   Relator Buechler, during his work at LB&B between 2003 and 2005, worked often in the main corporate headquarters in Columbia, Maryland and directly reported to F.

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

Edward Brandon, Sr., who at the time had the title of Chief Operating Officer. Lily Liang Brandon, Mr. Brandon's wife, at that time, had the title of President and CEO.

40.     During Relator Buechler's time in headquarters, he observed that Mrs. Brandon did not perform the day-to-day management of company. She never spoke to him about any of the contracts he managed nor about any company concerns. Additionally, to the best of his knowledge, the government employees assigned to the contracts he worked on never spoke to her about these contracts. She also has no background in operations and management, which is the service which the company is supposed to perform for the government.

41.     Relator Buechler did observe that Defendant Mrs. Brandon would stand up at the Holiday Party and occasionally at manager meetings and say that it was great year. This speech would last approximately thirty (30) seconds and was her entire involvement in these meetings. At manager meetings, after her short speech, she would often play a card game and did not participate any further in these meetings.

42.     Ms. Tina Nevett, an assistant to Mr. and Mrs. Brandon repeatedly told Relator Buechler that the only work that Mrs. Brandon performed for the company was that of social coordinator, and Ms. Nevett would refer to her sarcastically as the "party planner."

43.     Ms. Nevett further informed Relator Buechler that she would go on "trips" with Mrs. Brandon for a few days to various cities and that Mrs. Brandon would sample the food and the other amenities at the various hotels in a particular city, as well as the nightlife and culture. She and Mrs. Brandon would do this several times a year and that would result in Mrs. Brandon (and Ms. Nevett) not being physically in the office for several weeks out of the year. After sampling all the potential sites in a city, Mrs. Brandon would then choose a site for the next out of town meeting. Ms. Nevett, however, explained that Mrs. Brandon could

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

not even make that decision as she would ask Ms. Nevett which site she liked best and then choose that one.

44.     Ms. Nevett also informed Relator Buechler, and Relator Buechler observed, that Mrs. Brandon's main job duty while in the office was to make sure that the staff had enough snack food.  She would often, almost daily, leave the office to go to "Price Club" or a grocery store to personally purchase these snack food items, resulting in her being absent large periods of time on those days.  Her other duties included sending out birthday cards to the staff and signing holiday cards.

45.     During Relator Buechler's entire time working at the company, despite being a high-level manager on several contracts, he did not receive one instruction from Mrs. Brandon.  In fact, upon information and belief, he never even received one email from her the entire time that he worked there nor did he ever send her an email.  Relator Buechler's experience was not unique for a manager because managers at Defendant LB&B simply never even thought about consulting with nor involving Mrs. Brandon in the company's operations. It was common knowledge internally that she did not run any of the operations of the company and was just there as a front so that the company could get the aforementioned minority-female contracts.

46.     Relators Buechler and Sansbury noticed, however, that Mr. Brandon, on the other hand, ran the day-to-day operations of the company.  Defendant Mr. Brandon decided what contracts were bid upon and which contracts were not bid upon.  Defendant Mr. Brandon was and is the person who decides how information is disseminated about Defendant LB&B and who will disseminate this information.  Mr. Brandon previously worked at Jones Construction Company and had the operations and maintenance background, which was the work performed by the company.

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane ● Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

47.     Mr. Brandon was the point person who Relator Buechler reported to for all contracts.  For instance, Relator Buechler had to send all his reports directly to Mr. Brandon for review and approval.  Mr. Brandon was the one who drafted almost all, if not all, memoranda concerning the company's policies and procedures.  Mr. Brandon was the decision maker on hirings, firings and other personnel decisions.  For instance, Mr. Brandon had to approve Relator Buechler's recommendation to even hire a low-level, painter's assistant on one job.

48.     Relator Buechler also observed that company meetings, including manager meetings, and functions were run by Mr. Brandon.  Whenever there was a problem on a site, the manager was required to contact Mr. Brandon.  Mr. Brandon would then visit the site to correct the problem.  All COTARs, COs, and other government officials dealt directly with Mr. Brandon when a problem arose, and certainly never Mrs. Brandon.

49.     Defendant LB&B was not eligible to enter the 8(a) program because the daily business operations were not controlled by a socially and economically disadvantaged individual.  Moreover, its yearly certifications that it was controlled by a socially and economically disadvantaged individual (Mrs. Brandon) were false.  *See* 15 U.S.C. §§ 637(a)(4)(B);  (a)(4)(C);  (a)(6)(B).  As a result, the money paid from these programs to Defendant LB&B was conditioned on the presentation of false information to the SBA and other federal agencies and paid under false pretenses.  "But for" the intentional withholding of information and the false manipulation of information, the government would not have paid monies to Defendants LB&B because it was not eligible to enter into the 8(a) program.  *See U.S. v. TDC Management Corp., Inc.*, 288 F.3d 421, 428 (D.C. Cir.  2002) ("adopting a 'but for' measure of damages, based on what the government would have paid out had it known of the information that [Defendant] omitted . …."), *cert. denied* 537 U.S. 1048 (2002).

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

**Fraud Committed Upon the SBA's Mentor-Protégé Program by Defendants**

### BSA-LB&B Joint Venture

50.     In late 2003 and early 2004, as the time for Defendant LB&B to exit the 8(a)

certification (April 6, 2004) and the Small Disadvantaged Business (August 7, 2006)

programs was drawing near (*See SBA Profile*), Defendant LB&B began to look for a shell

company that it could use as a "protégé" to enter the SBA's Mentor-Protégé program so that it

could continue to illegally benefit from the 8(a) programs' advantages on bids on government

contracts.  During this time, Defendant LB&B began to discuss partnering to enter the SBA's

Mentor-Protégé program through contacts with Defendant BSA, an Alaskan, Inuit company

that was owned by Defendant Schuber.

51.     On April 6, 2004, Defendant LB&B exited the SBA 8(a) program.  *See SBA*

*Profile*.

52.     On August 16, 2004, the SBA approved a joint venture agreement submitted

by Defendant LB&B and Defendant BSA.  The BSA/LB&B Joint Venture, with LB&B as the

"mentor" and Bering Straits Aki, LLC as the "protégé[,]" became known as Sunny Point

Support Services ("SPSS").[1]  *See* Letter from Al Stubblefield to Frank Cox, dated Aug. 16,

2004 ("approval letter"), attached as Exhibit 5.  The general manager of the joint venture was

and is James J. Krulic.

53.     After receiving approval of the joint venture agreement and during the latter

months of 2004, the BSA-LB&B joint venture secured several government contracts,

including a Centers for Medicare & Medicaid Services (CMS) contract, a General Services

Administration, Public Buildings Services contract in Kentucky, a Federal Emergency

Management contract, and a contract with the United States Air Force.  *See* CMS Contract

**Joseph**
**Greenwald**
**& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200  ●  Fax 220-1214

---

[1] SPSS subsequently changed names to BSA/LB&B Joint Venture.

available at

<http://www.fedspending.org/fpds/fpds.php?reptype=r&database=fpds&record_id=2937278

&detail=3&datype=T&sortby=i> (signed Dec. 23, 2004), attached as Exhibit 6; Kentucky

Facility Support Contract  available at

http://www.fedspending.org/fpds/fpds.php?reptype=r&database=fpds&record_id=2786238&

detail=3&datype=T&sortby=i (signed Nov. 23, 2004), attached as Exhibit 7;

Air Force Contract available at

http://www.fedspending.org/fpds/fpds.php?reptype=r&database=fpds&record_id=8745211&

detail=3&datype=T&sortby=i (signed Oct. 1, 2004), attached as Exhibit 8.

54.     The project managers for these contracts were and are: (1) Andrew F. Van Der

Stuyf, project manager at the Centers for Medicare & Medicaid Services; (2) Edward J.

Keenan, project manager at Federal Emergency Management in Mt. Weather, Virginia, (3)

Donald Wilson, project manager at Elmendorf Air Force Base Hospital in Alaska; and (4)

Donald Krauth, project manager at Kentucky Facility Support Services.

55.     Until January of 2005, subsequent to receiving approval by the SBA of the

joint venture agreement and the securing of the aforementioned contracts for the joint venture,

Defendant LB&B, the non-8(a) Mentor, employed James J. Krulic, Andrew F. Van Der Stuyf,

Edward J. Keenan, Donald Wilson, and Donald Krauth.

56.     At the end of this same month, January of 2005, Mr. Krulic, the joint venture

general manager, was instructed by the Senior Vice President and Chief Financial Officer of

Defendant LB&B, David Van Scoyoc, to begin using Defendant BSA's expense reports

because as of January 1, 2005 he was to be, at least on paper, an employee of Defendant BSA.

Mr. Krulic has remained in the position of general manger of the joint venture to date and at

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane   •   Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

22

least on paper an employee of BSA.  However, after January of 2005, Mr. Krulic continued to hold himself out as an LB&B employee responsible for business development.

57.     At the end of that same month, January of 2005, Mr. Van Der Stuyf, Mr. Keenan, Mr. Wilson, and Mr. Krauth were also instructed by the Senior Vice President and Chief Financial Officer of Defendant LB&B, David Van Scoyoc, to begin using Defendant BSA's expense reports because as of January 1, 2005 they also were, at least on paper, employees of Defendant BSA.  These individuals were also further instructed by Mr. Van Scoyoc to have their "subordinates" begin to use BSA's expense reports because these "subordinates" were also being switched over, at least on paper, from being LB&B employees to BSA employees.

58.     It was a violation of the affiliation regulations for Mr. Krulic, an LB&B employee, to become employed in the general manager position for the joint-venture by directly removing him from his position as an employee for Defendant LB&B, the Mentor. The affiliation regulations specifically prohibit the manager of the joint-venture from being an employee of any company but the protégé.  This change in employer from LB&B to BSA demonstrates that Defendant LB&B and Defendant BSA provided false information on their joint venture agreement that was submitted to the SBA for approval to enter the program.  *See Lance Bailey supra*; 13 C.F.R. § 124.513(e);  *id.* at § (c)(2); 13 C.F.R. §124.520.

59.     The fact that: (1) the project manager positions for contracts with the joint venture were staffed by LB&B employees (Mr. Van Der Stuyf, Mr. Keenan, Mr. Wilson, and Mr. Krauth); (2) the subordinate positions at the joint venture were staffed by LB&B employees; and (3) these employees were instructed to fraudulently make it appear as if they actually reported to and were BSA employees (the protégé), further demonstrates that the two companies are not only closely affiliated but essentially one and the same at least for purposes

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

23

of the contracts being performed by the joint venture.  This relationship violates the affiliation regulations.  Moreover, the manner in which these positions at the joint venture were filled shows that the joint-venture agreement submitted for approval by the SBA was fraudulent.

60.     After January of 2005, in order to cover up the fact that the general manager position for BSA had been filled by an LB&B employee, Defendant LB&B began listing Mr. Krulic as a BSA employee on corporate documents.

61.     On or about September 7, 2005, under the signature of Mr. Krulic, the joint-venture sent a proposal to the Naval Yard in the District of Columbia, seeking to oversee a security contract and thus seeking to receive funds from the Naval Yard in the District of Columbia under its fraudulent scheme.

62.     Relator Buechler was working at LB&B when the joint-venture with BSA went into effect.  Relator Buechler is personally aware that BSA did little, if any, of the work on the joint-venture contracts.  Moreover, Relator Buechler is personally aware that LB&B did not provide any real mentoring to BSA and instead used its own employees to perform the work.

### Chilkat-LB&B Joint Venture

63.     During 2006, LB&B employed Sheldon (Shel) L. Jahn as a Senior Vice President.

64.     Upon information and belief, in or about 2006, Defendant Chilkat and Defendant LB&B received approval for a joint venture agreement from the SBA for a joint-venture under the Mentor-Protégé program.  Upon information and belief in late 2006 or early 2007, Defendant LB&B and Defendant Chilkat had Mr. Jahn switch his employment from LB&B to Chilkat, in violation of the affiliation requirements under the Mentor-Protégé program, so that he could become the general manager of the joint venture.  Thus, the joint

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

venture agreement submitted by Defendant LB&B and Defendant Chilkat also violated the affiliation requirements in the same manner that the BSA-LB&B joint venture agreement did.

### Defendants' False Certifications Frustrate the Core Purposes of the SBA Programs

65.     Defendant companies' false, annual certification and receipt of funds under the aforementioned contracts, in fact, frustrates the stated core purpose of the Small Business Act's set aside program for "socially and economically disadvantaged persons," which includes women and minorities but does not include businesses controlled by Caucasian males, except in the most unusual circumstances.  *See* 15 U.S.C. §631(f) (noting that a goal of the minority/female set asides is "opportunity for full participation in our free enterprise system by socially and economically disadvantaged persons is essential if we are to obtain social and economic equality for such persons and improve the functioning of our national economy").

66.     The fraud committed by Defendants frustrates the core purpose of the Mentor-Protégé program, which is to enhance the ability of the protégé to compete for federal contacts.  Because both the mentor and protégé corporations were so intertwined that they violated the affiliation requirements and BSA and Chilkat were simply fronts used so that the Defendants could obtain monies they were not entitled to receive, there was never a true protégé to benefit from the experience of being affiliated with the Mentor. *See An Overview: The SBA Mentor-Protege Program* (visited Jan. 31, 2007), available at <<http://www.sba.gov/8abd/mentoroverview.html>> (stating "[t]he purpose of the mentor-protege relationship is to enhance the capabilities of the Proteges; and to improve their ability to successfully compete for federal contracts").  Therefore, the core purposes of these programs were frustrated by Defendants' fraudulent acts.

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

## VI.    FRAUDULENT ACTS

67.    Relators have personal knowledge that Defendants obtained minority and female set aside contracts with the federal government and under the SBA's Mentor-Protégé program and consequently received federal funds.

68.    Relators have personal knowledge that Defendant LB&B annually certified to the SBA that the control of LB&B, *i.e.* the day-to-day management of the company, was under a female, minority individual, Defendant Mrs. Brandon, while the day-to-day management of the company really was held by Defendant Mrs. Brandon's white male husband, Defendant F. Edward Brandon, the "Chief Operating Officer."  This is a violation of the United States Code and the Federal Code of Regulations.  *See* 15 U.S.C. § 637; 18 U.S.C. § 1001; 15 U.S.C. §645; 13 C.F.R. 124.106.  Additionally, an "immediate family member" of the "applicant or Participant" cannot have "actual control or have the power to control" the company.  *See* 13 C.F.R. §124.106(e).  Therefore, Defendant Mr. Brandon's day-to-day control and operating of  the company is a violation of the Federal Code of Regulations.  *Id.*

69.    Defendant LB&B, through its officers, including Defendants Mr. and Mrs. Brandon, deliberately concealed from the SBA that LB&B was in the "control" of a white male and not the Asian female it certified controlled the company.  Defendant LB&B, through its officers, including Defendants Mr. and Mrs. Brandon, took these actions so that it could contract and then bill various Federal agencies for services that it was not entitled to contract for and then perform services under these contracts that it was not entitled to perform. Defendant LB&B thereby took contracts away from truly eligible minority and female companies that could have provided these services to the various agencies.  These actions undermine the goal of the Section 8(a) program, which is to remedy the effects of past discrimination that have been found to adversely affect certain groups' ability to participate in

**Joseph**
**Greenwald**
**& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

the free enterprise system. *See* 15 U.S.C. §631(f) (noting that the goal of the minority/female set asides is "opportunity for full participation in our free enterprise system by socially and economically disadvantaged persons [so that] we [can] obtain social and economic equality for such persons and improve the functioning of our national economy").

70.     Alternatively, Defendant LB&B, through its officers was in deliberate ignorance of the falsity of Mrs. Brandon's control of the company, and/or in reckless disregard of the fact that Mrs. Brandon is not the individual who "controls" the company and then billed various Federal agencies for services that it was not entitled to contract for and then perform services under these contracts that it was not entitled to perform.

71.     Defendants, through their officers, including Defendants Mr. and Mrs. Brandon and Defendants Schuber and Krulic, falsely certified in joint venture agreements submitted to the SBA for approval, under the SBA's Mentor-Protégé program, that the joint venture employed general managers who were from 8(a), Alaskan, Inuit companies. Defendants intentionally took these actions so that they could contract and then bill various Federal agencies for services that they were not entitled to contract for and then perform services under these contracts that they were not entitled to perform.  Defendants thereby took contracts away from truly eligible companies that could have provided these services to the various agencies, thus undermining the goal of the Section 8(a) program and the Mentor-Protégé program. *See* 15 U.S.C. §631(f) (noting that the goal of the minority/female set asides is "opportunity for full participation in our free enterprise system by socially and economically disadvantaged persons [so that] we [can] obtain social and economic equality for such persons and improve the functioning of our national economy"); *An Overview: The SBA Mentor-Protege Program* (visited Jan. 31, 2007), available at <<http://www.sba.gov/8abd/mentoroverview.html>> ("The purpose of the mentor-protege

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

relationship is to enhance the capabilities of the Proteges; and to improve their ability to successfully compete for federal contracts").

72.     Alternatively, Defendants, through their officers were in deliberate ignorance of the falsity of the requirements under the affiliation provisions of the Mentor-Protégé program and then billed various Federal agencies for services that they were not entitled to contract for and then perform services under these contracts that they were not entitled to perform.

73.     Both the fraudulent submission of documents to the SBA certifying that Mrs. Brandon ran the day-to-day operations of Defendant LB&B and that the joint ventures were managed by an employee of an 8(a), Alaskan, Inuit company were critical to the SBA's decisions to certify the Defendant companies as eligible to enter into their respective SBA programs and to receive federal funds.  "The withholding of such information [or acting in deliberate ignorance and/or acting with reckless disregard of such information] -  information critical to the decision to pay -- is the essence of a false claim."  *See U.S. v. TDC Management Corp., Inc.*, 288 F.3d 421, 426 (D.C. Cir.  2002) (quoting *Ab-Tech Constr., Inc. v. U.S.,* 31 Fed. Cl. 429, 434 (1994), *aff'd,* 57 F.3d 1084 (Fed. Cir. 1995)), *cert. denied* 537 U.S. 1048 (2002).

## COUNT I
## FALSE CLAIMS ACT VIOLATION
### (Violation of 31 U.S.C. § 3729(a)(1))

74.     Relators-Plaintiffs incorporate by reference all preceding paragraphs.

75.     Defendants knowingly presented or caused to be presented false or fraudulent documents to the SBA so Defendant companies could avail themselves of numerous contracts with several federal government agencies for those agencies' set aside contracts and then received payment for services that they were not eligible to provide.

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

76.    Defendants knowingly presented or caused to be presented false or fraudulent information in which Defendant companies certified that they were acting in compliance with all pertinent laws and regulations, especially and including those laws and regulations central to the SBA programs that were defrauded, when in fact Defendant companies were billing for and performing services that they were not eligible to provide.

77.    Defendant companies, by and through their officers, agents and employees authorized their various officers, agents, and employees to take the actions set forth above.

78.    Numerous federal agencies, through various set aside programs, made payments to Defendant companies in accordance with contracts between those agencies and Defendant companies based upon false and fraudulent information.  The United States Government is entitled to full recovery of the amount paid by those agencies because "but for" the fraud perpetrated upon the government such payments would not have been made. *See U.S. v. TDC Management Corp., Inc.*, 288 F.3d 421, 428 (D.C. Cir.  2002) ("adopting a 'but for' measure of damages, based on what the government would have paid out had it known of the information that [Defendant] omitted . ..."), *cert. denied* 537 U.S. 1048 (2002).

79.    As set forth in the preceding paragraphs, Defendants knowingly violated 31 U.S.C. § 3729(a)(1) and have damaged the United States by their actions in an amount to be determined at trial.

### COUNT II
### FALSE CLAIMS ACT VIOLATION
(Violation of 31 U.S.C. § 3729(a)(2))

80.    Relators-Plaintiffs incorporate by reference all preceding paragraphs.

81.    Defendants knowingly made, used, or caused to be made or used false records or statements to get false or fraudulent claims paid or approved by numerous federal agencies under various minority and female set aside programs through several government contracts.

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  •  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

82.     Defendants knowingly made or caused to be made false statements during the certification process under the §8(a) program administered by the SBA and under the SBA's Mentor-Protégé program.  During this process, Defendants certified or caused others to certify that Defendant companies were acting in compliance with all pertinent laws and regulations, especially and including those laws and regulations central to the SBA programs that were defrauded, when in fact Defendant companies were not eligible to contract, bill, and receive money from these various set aside contracts.

83.     Defendants knowingly presented or caused to be presented false or fraudulent statements or records to the SBA and various government agencies in order to receiving government funding for services they were not eligible to provide.

84.     Defendant companies, by and through their officers, agents, and employees authorized their various officers, agents, and employees to take the actions set forth above.

85.     Numerous government agencies made payments to Defendant companies based upon false and fraudulent statements or records.  The United States Government is entitled to full recovery of the amount paid by these agencies, to the extent of its federal share of funding, for the claims based upon false or fraudulent statements because "but for" the fraud perpetrated upon the government such payments would not have been made.  *See U.S. v. TDC Management Corp., Inc.*, 288 F.3d 421, 428 (D.C. Cir.  2002) ("adopting a 'but for' measure of damages, based on what the government would have paid out had it known of the information that [Defendant] omitted . ..."), *cert. denied* 537 U.S. 1048 (2002).

86.     As set forth in the preceding paragraphs, Defendants knowingly violated 31 U.S.C. § 3729(a)(2) and have damaged the United States by their actions in an amount to be determined at trial.

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

## COUNT III
## FALSE CLAIMS ACT VIOLATION
### (Violation of 31 U.S.C. § 3729(a)(3))

87.    Relators-Plaintiffs incorporate by reference all preceding paragraphs.

88.    Defendants each conspired to defraud the Government by obtaining false or fraudulent claims allowed or paid by having Defendant companies contract with numerous government agencies within their respective set aside programs.

89.    Defendants knowingly made or caused to be made false statements to the SBA in which Defendant companies certified or caused others to certify that Defendant companies were acting in compliance with all pertinent laws and regulations, especially and including those laws and regulations central to the SBA programs that were defrauded, when in fact Defendant companies were performing services for numerous government agencies that they were not eligible to bid upon or could contract to receive.

90.    Defendants knowingly presented or caused to be presented false or fraudulent statements or records to the SBA, representing that Defendant LB&B was owned and controlled by Defendant Mrs. Brandon and that certain employees were managing joint ventures under the SBA's Mentor-Protégé program, when Defendants knew that such statements were not accurate and violated the law. *See* 18 U.S.C. § 1001; 15 U.S.C. §645; 31 U.S.C. § 3730(b); 13 C.F.R. §121.103;  13 C.F.R. §124.520; 13 C.F.R. § 124.513.

91.    Defendants, by and through their officers, agents, and employees, authorized their various officers, agents, and employees to take the actions set forth above.

92.    Numerous government set aside programs made payments to Defendant LB&B based upon false and fraudulent statements.  The United States Government is entitled to full recovery of the amount paid by these agencies, to the extent of its federal share of funding, for the claims based upon false or fraudulent statements because "but for" the fraud

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

perpetrated upon the government such payments would not have been made. *See U.S. v. TDC Management Corp., Inc.*, 288 F.3d 421, 428 (D.C. Cir. 2002) ("adopting a 'but for' measure of damages, based on what the government would have paid out had it known of the information that [Defendant] omitted . ..."), *cert. denied* 537 U.S. 1048 (2002).

93.    As set forth in the preceding paragraphs, Defendants knowingly violated 31 U.S.C. § 3729(a)(3) and have damaged the United States by their actions in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Relators-Plaintiffs Sansbury and Buechler on behalf of themselves and the United States, prays:

A.    That this Court enter judgment under Counts I, II and III against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions in violation of 31 U.S.C. § 3729, *et seq.,* plus statutory penalties;

B.    That the Relators-Plaintiffs be awarded all costs incurred, reasonable attorney's fees and expenses;

C.    That in the event the United States Government intervenes at the time the action is unsealed and proceeds with this action, the Relators-Plaintiffs be awarded an amount of at least 15%, but not more than 25%, of the proceeds of this action or settlement of the claims in Counts I, II and III.

D.    That in the event the United States Government does not intervene as set forth above, the Relators-Plaintiffs be awarded an amount of at least 25%, but not more than 30%, of the proceeds of this action or settlement of the claims in Counts I through III;

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane  ●  Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax 220-1214

E.   That the United States Government and Relators-Plaintiffs receive all relief,

both at law and in equity, to which they are entitled; and,

F.   That a trial by jury be held on all issues.

JOSEPH, GREENWALD & LAAKE, P.A.


By:  _____

Jay P. Holland  (Bar No. 422258)
Jholland@jgllaw.com
Brian J. Markovitz (Fed. Bar No. 481517)
Bmarkovitz@jgllaw.com
6404 Ivy Lane, Suite 400
Greenbelt, MD  20770
(301) 220-2200
(301) 220-1214 (facsimile)
Attorneys for Relator


DATED: ___2|1|07_____

**Joseph
Greenwald
& Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane   ●   Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 ● Fax  220-1214